**UNITED STATES of America, Appellee,**

v.

**Torrence JACKSON, Defendant–Appellant.**

**Docket No. 02–1026.**

United States Court of Appeals, Second Circuit.

Sept. 20, 2002.

Lisa A. Peebles, Assistant Federal Public Defender, (Alexander Bunin, Federal Public Defender for the Northern District of New York, Melissa A. Tuohey, Assistant Federal Public Defender, on the brief), Syracuse, NY, for Appellant.

John G. Duncan, Executive Assistant United States Attorney, (Joseph A. Pavone, United States Attorney for the Northern District of New York, on the brief), Syracuse, NY, for Appellee.

Present WALKER, Jr., Chief Judge, NEWMAN and PARKER, Circuit Judges.

## SUMMARY ORDER

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED AND DECREED** that the judgment of said district court be and it hereby is **AFFIRMED.**

Defendant-appellant Torrence Jackson appeals from a judgment of conviction and sentence entered by the United States District Court for the Northern District of New York (Hurd, *D.J.*), following a jury trial at which he was found guilty of being a convicted felon in possession of a weapon in violation of 18 U.S.C. § 922(g)(1). He was sentenced to a term of imprisonment of 66 months, three years supervised release and a $100 special assessment.

The weapon at issue was discovered on April 21, 2000 after Jackson fled from two Syracuse Police officers who had approached him for questioning in connection with an ongoing investigation into a shooting incident that had occurred on April 19, 2000. In the morning on April 21, the two officers spotted a man they believed to be Jackson while patrolling in a marked police car. When they pulled over to ask the man his name, he turned and fled. One of the officers, Officer Llukaci, pursued on foot, following Jackson into a fenced area. The officer then saw Jackson reach into the front of his pants and remove a black object, which Llukaci believed to be a handgun. In response, Llukaci pulled his duty weapon, at which point Jackson tossed the black object over the fence. Officer Llukaci, assisted by his partner, then arrested Jackson, and the police recovered a loaded .38 caliber handgun and black holster from the other side of the fence.

The two officers who approached Jackson on April 21 were acting in reliance on two "wanted" flyers that had been issued by two other officers on the basis of a positive identification of Jackson by an eyewitness to the April 19 shooting. In the district court, Jackson filed a motion *in limine* to exclude the weapon and holster, which the district court denied in a ruling from the bench. The district court also denied defendant's motion to exclude all evidence concerning his alleged involvement in the April 19 shooting.

On appeal, Jackson argues that (1) the district court erred in denying his motion to exclude the firearm and holster because they were fruits of an unlawful arrest conducted by the Syracuse Police; and (2) the district court abused its discretion in admitting evidence regarding the circumstances of Jackson's arrest while excluding evidence that the state charges brought against him for the April 19 incident had been dismissed.

"When we examine a ruling on a motion to suppress, we review the district court's factual findings for clear error and its conclusions of law *de novo*." *United States v. Harrell*, 268 F.3d 141, 145 (2d Cir.2001). We review evidentiary rulings for abuse of discretion. *United States v. McDermott*, 245 F.3d 133, 140 (2d Cir. 2001).

■ With respect to the district court's denial of defendant's motion to suppress the weapon and holster, Jackson's core contention is that the police officers were unjustified in approaching him because the two "wanted" flyers on which they relied were not supported by reasonable suspicion. However, Jackson had been positively identified and described in detail by an eyewitness to the April 19 shooting. We thus easily conclude that the "wanted" flyers were "issued on the basis of articulable facts supporting a reasonable suspicion that the wanted person has committed an offense." *United States v. Hensley*, 469 U.S. 221, 232, 105 S.Ct. 675, 83 L.Ed.2d 604 (1985). Accordingly, the two officers who acted in reliance on the flyers were justified in stopping Jackson for questioning. *See id.* at 232; *see also Ornelas v. United States*, 517 U.S. 690, 692, 116 S.Ct. 1657, 134 L.Ed.2d 911 (1996) ("An investigatory stop is permissible under the Fourth Amendment if supported by reasonable suspicion."); *Terry v. Ohio*, 392 U.S. 1, 22, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).

■ Once the officers approached Jackson and he fled, the officers' reasonable suspicion was enhanced. *See Sibron v. New York*, 392 U.S. 40, 66–67, 88 S.Ct. 1889, 20 L.Ed.2d 917 (1968) ("[F]light at the approach of strangers or law officers ... when coupled with specific knowledge ... relating the suspect to the evidence of crime" gives rise to probable cause for arrest.); *United States v. Martinez–Gonzalez*, 686 F.2d 93, 99–100 (2d Cir.1982). When Jackson pulled a weapon, Officer Llukaci had sufficient probable cause to arrest Jackson on the belief that a crime was being committed. Accordingly, we conclude that when the police officers approached Jackson and arrested him, their actions were supported by reasonable suspicion and probable cause, respectively. The district court was thus correct in denying defendant's motion *in limine* to suppress the weapon and holster.

■ We also reject Jackson's contention that the district court abused its discretion by admitting into evidence the circumstances of Jackson's arrest while excluding the certificate of disposition showing that the state charges based on the April 19 shooting incident had been dismissed. It is well established that background evidence may be admitted "to show, for example, the circumstances surrounding the events [alleged in the indictment]." *United States v. Gonzalez*, 110 F.3d 936, 941 (2d Cir.1997) (internal quotation marks omitted). Here, the district court permitted the government to introduce limited information regarding the April 19 shooting incident "(1) in order to provide an understanding of the circumstances surrounding the events charged in the indictment, and (2) because such evidence is intertwined with evidence concerning the offense charged." Accordingly, the government introduced a redacted version of one of the "wanted" flyers to establish that

Jackson was wanted in connection with a shooting, thus providing the jury with an explanation as to why the officers had initially approached him. The district court did not abuse its discretion in admitting this evidence.

The district court also did not abuse its discretion by denying defendant's offer of proof regarding the certificate of disposition of the state charges on the ground that the certificate was irrelevant to the federal felon-in-possession charge and could potentially confuse the jury. *See* Fed.R.Evid. 401, 403. Moreover, any possible error in admitting evidence regarding the shooting incident was cured by the district court's limiting instruction, by which the jury was charged that such evidence

> was admitted solely for the purpose of providing background as to why the officers approached the defendant for questioning and to allow you to understand the circumstances surrounding the events in question. Under the circumstances, it was lawful for the officers to stop and question the defendant. There has been no evidence introduced during the trial that the defendant was involved in any shooting incident. Therefore, you are instructed not to draw any adverse inferences against the defendant from this testimony.

"Absent evidence to the contrary, we must presume that juries understand and abide by a district court's limiting instructions." *United States v. Downing*, 297 F.3d 52, 59 (2d Cir.2002). The district court gave an appropriate limiting instruction and had a reasonable basis for each of its evidentiary rulings. There was no abuse of discretion.

For the foregoing reasons, the judgment of the district court is **AFFIRMED.**